# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

KENNETH M. PEDELEOSE,
    Appellant,

    v.

DEPARTMENT OF DEFENSE,
    Agency.

DOCKET NUMBER
AT-1221-14-0260-W-1

DATE: January 22, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kenneth M. Pedeleose</u>, Acworth, Georgia, pro se.

<u>Cleora S. Anderson</u>, Smyrna, Georgia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1   The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2      On February 16, 2010, the agency issued the appellant a notice proposing to suspend him for 14 days from his GS-12 Industrial Engineer position with the agency's Defense Contract Management Agency, Lockheed Martin Marietta (DCMA LMM), in Marietta, Georgia, based on a charge of Insolent and Intimidating Behavior Toward Management Officials. Initial Appeal File (IAF), Tab 1, Attachment 2 at 1 of 7, Tab 18 at 4-7 of 28. The charge was supported by three specifications, each of which described a November 2009 incident between the appellant and a management official.[2] IAF, Tab 18 at 5.

¶3      The first specification alleged that on the afternoon of November 17, 2009, the appellant became very upset when J.T. inquired about a meeting that he had asked the appellant to attend earlier that afternoon. *See id.* The specification

---

[2] Two of the incidents involved the appellant's second-level supervisor, J.T. *See* IAF, Tab 18 at 5. The other incident involved the C-5 Contracts Operations Supervisor, L.G. *See id.*

alleged that the appellant responded to J.T.'s question by pointing at his clipboard and slamming his pen while insisting that he was not needed at the meeting. *Id.*

¶4 The second specification alleged that, during a meeting the following morning,[3] the appellant became agitated when L.G. asked him which afternoon sessions he would be attending, so they went into the hall. IAF, Tab 18 at 5. The specification alleged that the appellant then raised his voice and pointed his finger at L.G., even after L.G. asked him to calm down, and that the appellant continued yelling and threatened to file a complaint against L.G., the appellant's supervisor, and the group chief. *Id.* The specification further alleged that L.G. felt threatened by the appellant's behavior, which L.G. described as "totally unprofessional and out of control," and that L.G. thought that the appellant was going to hit him. *Id.*

¶5 The third specification alleged that, immediately after his confrontation with L.G., the appellant went to J.T.'s office and loudly and repeatedly stated that he wanted to go home. *See id.* The specification further alleged that, when J.T. asked the appellant to come into his office and talk to him, the appellant complained about covering another employee's workload and loudly stated that L.G. had disrespected and embarrassed him. *Id.* The specification stated that J.T. described the appellant as red-faced and full of rage and that J.T. described the appellant's conduct as "explosive" and "beyond anything [J.T.] ha[d] ever seen from [the appellant] before." *Id.* J.T. also stated that, although he had seen the appellant react angrily to other minor supervisory directives in the past, he felt that the appellant's behavior during this incident was especially flagrant and troubling. *Id.*

¶6 The appellant submitted a written response to the proposed suspension, in which he denied the alleged misconduct and asserted that the proposed suspension

---

[3] Due to an apparent typographical error, specification two of the notice of proposed suspension incorrectly states that the incident involving L.G occurred on the morning of November 17, 2009, rather than November 18, 2009. IAF, Tab 18 at 5.

was "whistleblower retaliation." IAF, Tab 17 at 27-36 of 39. On April 21, 2010, DCMA LMM Deputy Commander H.S. issued a decision sustaining the proposed suspension. *Id.* at 17-20. The suspension was effective April 25, 2010, through May 8, 2010. IAF, Tab 1, Attachment 2 at 5-6.

¶7 In 2012, the appellant filed a complaint with the Office of Special Counsel (OSC) in which he alleged that the agency had suspended him in retaliation for disclosing violations of the Truth in Negotiation Act (TINA) and "other issues of fraud and abuse of authority." IAF, Tab 1, Enclosure 2 at 1 of 77. After OSC closed its inquiry into his allegations, IAF, Tab 17 at 14-15, the appellant filed an IRA appeal with the Board, alleging that the agency had suspended him for 14 days in retaliation for his whistleblowing activity, IAF, Tab 1.

¶8 In support of his appeal, the appellant asserted that, from October 7, 2009, to March 10, 2010, he made the following seven disclosures to the U.S. Air Force Office of Special Investigation (OSI): (1) an October 7, 2009 email expressing his concerns about Lockheed Martin Aeronautics' (LM Aero) management of the Low Rate Initial Production (LRIP) program, price gouging, and DCMA management rewriting his reports to conceal negative information about LM Aero; (2) an October 8, 2009 email outlining the appellant's talking points for a meeting with OSI the following day; (3) the appellant's October 9, 2009 meeting with OSI; (4) an October 13, 2009 email referencing "the fraud situation where Warner Robins said they had to do work that LM Aero billed for"; (5) a January 19, 2010 email in which the appellant stated that the LRIP Lot Four proposal was defective because its information was outdated and inflated costs; (6) two February 4, 2010 emails in which the appellant provided information he gathered regarding systemic contract overestimation by LM Aero and asked whether the information constituted a TINA violation; and (7) a March 10, 2010 email containing the appellant's complaint against J.T. and J.T.'s edits to the appellant's LRIP Lot Four evaluation, which included the removal of comments about LM Aero having "serious problems with their estimating system." IAF,

Tab 1, Enclosure 1 at 6, 29-48. The appellant initially requested a hearing, but subsequently withdrew that request. *Id.*, Attachment 2 at 1, Tab 3.

¶9    Based on the parties' submissions, the administrative judge issued an initial decision in which he found that the Board has jurisdiction over the appeal but denied the appellant's request for corrective action. IAF, Tab 26, Initial Decision (ID). The administrative judge found that the appellant proved by preponderant evidence that all of his disclosures were protected but that the appellant could not prove that those disclosures were contributing factors in his suspension. ID at 5-8. The administrative judge further found that, even if the appellant could establish that the disclosures were contributing factors in his suspension, the agency proved by clear and convincing evidence that it would have suspended the appellant in the absence of the protected disclosures. ID at 8-11.

¶10    The appellant has filed a petition for review, which is supplemented with a written declaration and five attachments totaling approximately 300 pages.[4] Petition for Review (PFR) File, Tab 1. The agency has filed a response to the petition for review. PFR File, Tab 4. The appellant has filed a reply to the agency's response. PFR File, Tab 5.

## ANALYSIS

¶11    In an IRA appeal, after establishing the Board's jurisdiction,[5] the appellant must then establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 11 (2012). If the appellant meets that

---

[4] The appellant asserts on review that he has resubmitted his original case "in its entirety." PFR File, Tab 1 at 1; *see* IAF, Tab 25. Because the documents the appellant submits on review are in the record below, they do not constitute new evidence, and we have not considered them. *See Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980).

[5] We discern no reason to disturb the administrative judge's finding that the appellant established Board jurisdiction over this appeal. *See* ID at 1.

burden, the Board shall order such corrective action as it considers appropriate unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011). Clear and convincing evidence is "that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(d).

¶12 As noted above, the administrative judge found that the appellant proved by preponderant evidence that all of his asserted disclosures were protected. ID at 5. The agency has not filed a cross petition for review contesting this determination, and we see no reason to reexamine it. Accordingly, we will proceed to the issue of whether the appellant proved that his protected disclosures were a contributing factor in his suspension.

The appellant proved by preponderant evidence that his protected disclosures were a contributing factor in his suspension.

¶13 The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action with respect to the individual making the disclosure. *Usharauli v. Department of Health & Human Services*, 116 M.S.P.R. 383, ¶ 31 (2011); 5 C.F.R. § 1209.4(c). The most common way of proving the contributing factor element is the "knowledge/timing test." *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 435 (Fed Cir. 2009). Under that test, an appellant can prove that his disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* Once the knowledge/timing test has been met, the administrative judge must find that the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue even

if, after a complete analysis of all of the evidence, a reasonable fact finder could not conclude that the appellant's whistleblowing was a contributing factor in the personnel action. *Rubendall v. Department of Health & Human Services*, 101 M.S.P.R. 599, ¶ 12 (2006), *superseded on other grounds by statute*, Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465. Any contrary evidence regarding a contributing factor may be considered in the context of the agency's burden to show clear and convincing evidence that it would have taken the adverse action notwithstanding the appellant's protected disclosures. *Wadhwa*, 110 M.S.P.R. 615, ¶ 13.

¶14     It is undisputed that the appellant informed his immediate supervisor, N.N., of his disclosures during a meeting on February 3, 2010, and that N.N. issued the appellant the notice of proposed suspension on February 16, 2010. *See* IAF, Tab 18 at 4, Tab 23 at 8 of 47. Addressing the contributing factor element, the administrative judge found that, because the issuance of the notice of proposed suspension preceded the appellant's March 10, 2010 disclosure, that disclosure was not "relevant to this case." ID at 6.

¶15     We agree. Because the March 10, 2010 email to OSI postdates the proposed suspension, it could not have been a contributing factor in that action. *See Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 26 (2007). While the March 10, 2010 email predates the issuance of the suspension decision, there is no evidence that the deciding official was aware of this email at the time she rendered her decision. Therefore, there is no basis for the Board to conclude that this disclosure was a contributing factor in the appellant's suspension. *See Reed v. Department of Veterans Affairs*, 122 M.S.P.R. 24, ¶ 24 (2014).

¶16     As for the appellant's other protected disclosures, the administrative judge stated, "At first blush it would seem that the appellant can establish the knowledge/timing test, as he received notice of the proposed suspension from [N.N.] only thirteen days after revealing to her that he made protected disclosures to OSI." ID at 7. The administrative judge then considered contrary evidence

regarding the contributing factor element, specifically the following statements made by N.N. or DCMA's Director of Labor and Employee Relations, D.M., in their written declarations:[6] (1) N.N.'s statement that she decided before Thanksgiving to initiate disciplinary action against the appellant for his behavior in November 2009; (2) D.M.'s statement that N.N. first consulted a DCMA employee relations specialist regarding her decision to discipline the appellant in November 2009; and (3) D.M.'s statement that a suspension proposal often takes at least 2 weeks from the initial discussion of the incident with the employee relations specialist to the time the proposal is issued to the employee. ID at 7-8; *see* IAF, Tab 23 at 27, 35, 36.

¶17    Based on these statements, the administrative judge found that the appellant had failed to meet his burden of proving that his disclosures were a contributing factor in the suspension. ID at 7-8. More specifically, based on the first two statements described above, the administrative judge found that the appellant could not prove that N.N. knew about his protected disclosures in November 2009, when she decided to discipline him for his misconduct and consulted with an employee relations specialist regarding that discipline. *Id.* Based on D.M.'s statement regarding the amount of time required to issue a proposed suspension, the administrative judge found that, even if N.N. contacted the employee relations specialist immediately after learning of the appellant's disclosures on February 3, 2010, it is unlikely that the suspension proposal would have been finished in time to be issued to the appellant 8 business days later. ID at 7. Therefore, the administrative judge found, due to the timing of the proposed suspension, a reasonable person could not conclude that the disclosure was a contributing factor in the action. ID at 8.

---

[6] Although the administrative judge states that N.N. and D.M. made these statements in their depositions, *see* ID at 7, the administrative judge seems to be referring to the written declarations of N.N. and D.M, *see* IAF, Tab 23 at 24-29 and 33-36 of 47.

¶18    We find, however, that the appellant satisfied the knowledge/timing test by showing that the proposing official became aware of his protected disclosures on February 3, 2010, and issued the notice of proposed suspension on February 16, 2010. Once the appellant satisfied the knowledge/timing test, he proved the contributing factor element of his claim, and it was therefore improper for the administrative judge to consider contrary evidence regarding that element. *See Wadhwa*, 110 M.S.P.R. 615, ¶ 13 (finding that, because the appellant satisfied the knowledge/timing test, the administrative judge should not have considered any further evidence on the contributing factor issue).

The agency proved by clear and convincing evidence that it would have suspended the appellant in the absence of his whistleblowing.

¶19    Because the appellant met his burden to establish a prima facie case of whistleblowing, the burden shifted to the agency to prove by clear and convincing evidence that it would have taken the suspension action in the absence of the appellant's whistleblowing.[7] *See Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 16 (2012). In determining whether an agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against

---

[7] The WPEA, Pub. L. No. 112-199, § 114(b), 126 Stat. 1465, 1472, amended 5 U.S.C. § 1221(e)(2) to provide that the Board may not proceed to the clear and convincing evidence test unless it has first made a finding that the appellant established his prima facie case of reprisal for whistleblowing. The WPEA was effective as of December 27, 2012, Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476, and thus is applicable to this appeal, which was filed on December 18, 2013. *See* IAF, Tab 1. The administrative judge acted inconsistently with the WPEA by reaching the clear and convincing evidence stage even after finding that the appellant failed to establish a prima facie case, but this error is of no consequence because of our finding that the appellant established a prima facie case. Thus, it was, in fact, proper and necessary for the administrative judge to determine whether the agency established by clear and convincing evidence that it would have suspended the appellant despite his protected activity.

employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *See, e.g.*, *Yunus v. Department of Veterans Affairs*, 84 M.S.P.R. 78, ¶ 27 (1999), *aff'd*, 242 F.3d 1367 (Fed. Cir. 2001).

The strength of the agency's evidence in support of its action

¶20  The appellant argues on review that he "did nothing wrong or improper," PFR File, Tab 1 at 1 (emphasis in original), and he asserts that the agency's case against him is "ridiculous and without merit," *id.* at 2. In particular, he asserts that if he had engaged in the alleged misconduct, the agency would have taken some action to determine whether he was a hazard to himself or others instead of issuing him a suspension notice, and he would not have received a 2009 year-end performance appraisal with three Outstanding ratings and two Fully Successful ratings. *Id.* at 4-7. He also contends that, because the alleged misconduct took place in a "heavily populated" building, individuals other than J.T. and L.G. would have witnessed his behavior. *Id.* at 6.

¶21  We find unavailing the appellant's apparent assertion on review that the agency's evidence in support of his 14-day suspension was weak. In support of the charge, the agency submitted memoranda which were written by J.T. and L.G. on November 18, 2009, while the incidents of November 17 and 18, 2009, involving the appellant were still fresh in their minds. *See* IAF, Tab 18 at 12-14. The memoranda contained detailed descriptions of the incidents, including the appellant's behavior and demeanor. *Id.*

¶22  Moreover, the record shows that the appellant's 14-day suspension was not based on an isolated occurrence. The charge against the appellant was supported by three specifications, each describing an incident between the appellant and a

supervisor during a period of less than 24 hours. *Id.* at 5. Further, as the administrative judge noted in the initial decision, during the year preceding the action at issue in this appeal, the appellant served a 1-day suspension for rude and disrespectful statements in June 2009, and he received two Letters of Warning and Instruction, one on September 29, 2009, directing him to carry out his job duties without threats and defiance, and the other on January 20, 2010, based on a complaint by another employee who alleged that the appellant had repeatedly made disparaging and unprofessional statements directed at management.[8] ID at 9; *see* IAF, Tab 18 at 8, 16-19. As the administrative judge also noted, according to the Table of Penalties in the DCMA Guidebook on Maintaining Discipline, the recommended penalty for a second offense of disrespectful conduct ranges from a 10-day suspension to removal. ID at 9-10; *see* IAF, Tab 23 at 38. In light of these circumstances, we agree with the administrative judge's finding that, given the appellant's history of behavioral issues and his previous suspension for similar disrespectful conduct, a 14-day suspension was well within the agency's purview to issue. ID at 10.

<u>The existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision</u>

¶23    The second factor to consider in determining whether the agency met its burden of proving by clear and convincing evidence that it would have taken the action in the absence of the appellant's whistleblowing is the existence and strength of any retaliatory motive on the part of the officials who were involved in the decision in question. *See Carr*, 185 F.3d at 1323-24. In this case, the agency officials involved in the decision to suspend the appellant are N.N. and

---

[8] The appellant argues on review that the allegations underlying the January 20, 2010 Letter of Warning and Instruction are also "ridiculous," and he asserts that the agency had no evidence to support the "harassment charge." PFR File, Tab 1 at 7-10. The sufficiency of the agency evidence to support the appellant's prior discipline is immaterial to this appeal.

H.S.; H.S. was selected to be the deciding official because of J.T.'s involvement in the November 2009 incidents.  ID at 10; *see* IAF, Tab 23 at 9.

¶24     Addressing this factor, administrative judge found that N.N. did not know about the disclosures when she initiated the disciplinary action in November 2009, and that, "even if she had delayed discipline for the November 2009 behavior until the appellant revealed his whistleblowing activity, it is unlikely that the administrative process would have allowed for issuance of a proposal letter only eight business days after an alleged infraction."[9]  ID at 10.

¶25     We find, however, that one of the appellant's protected disclosures arguably implicated N.N., and thus, she may have had a motive to retaliate against the appellant because of this disclosure.[10] As previously noted, in the appellant's October 7, 2009 email to OSI, he raised concerns about management rewriting his reports to conceal negative information about LM Aero.  IAF, Tab 1, Enclosure 1 at 29.  As the appellant's supervisor, N.N. may well have been involved in the alleged wrongdoing, particularly in view of the following statement in the last paragraph of that email:  "I expect that my supervisor will rewrite another one of my reports."  *Id.*  Nevertheless, even if this disclosure implicated N.N. in the alleged wrongdoing and thereby provided her with a motive to retaliate against the appellant, considering the strength of the agency's evidence, it appears, on balance, that N.N.'s primary motive for proposing the appellant's 14-day suspension was her concern over his disrespectful and rude conduct rather than any animus or ill will.  Accordingly, we find that any evidence of motive to

---

[9] The administrative judge apparently intended to say "eight business days after N.N. learned of the appellant's disclosures to OSI" rather than "eight business days after an alleged infraction."  ID at 10.

[10] For purposes of our analysis, we are assuming that N.N. initiated the proposed suspension immediately after she learned of the appellant's disclosure on February 3, 2010, and that the administrative process allowed for issuance of the notice of proposed suspension by February 16, 2010.

retaliate on the part of the relevant agency officials does not outweigh the strength of the evidence in support of the agency's suspension decision.

Evidence that the agency takes similar actions against similarly-situated, nonwhistleblower employees

¶26    Addressing the third *Carr* factor, the administrative judge noted that both the appellant and the agency state that there are no similarly-situated employees. ID at 10.  Because there is no evidence that a similarly-situated employee received a lesser penalty for the same misconduct, the third *Carr* factor is not a significant factor for the Board's analysis in the instant appeal.

¶27    Weighing the three *Carr* factors against one another, and considering the record evidence as a whole, we agree with the administrative judge that the agency established by clear and convincing evidence that it would have suspended the appellant for 14 days even in the absence of his protected disclosures.  ID at 11.  Although N.N. arguably had a motive to retaliate, the agency had a strong basis to suspend the appellant for 14 days because of his rude and disrespectful conduct.

The appellant's adjudicatory bias claim is unavailing.

¶28    The appellant also raises a claim of adjudicatory bias on review, alleging that the administrative judge was biased and "abdicated his responsibility as a [j]udge."  PFR File, Tab 1 at 1.  In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980).  Further, an administrative judge's conduct during the course of a Board proceeding will warrant a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  The appellant's bias claim does not involve extrajudicial conduct and the appellant has failed to identify on review

any comment or action that reveals a deep-seated favoritism or antagonism against him. His conclusory statement on review that the administrative judge is biased is insufficient to overcome the presumption of honesty and integrity afforded the administrative judge.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:            _____
                                                   William D. Spencer
                                                   Clerk of the Board

Washington, D.C.